```
                                                         FILED
                                                    HARRISBURG, PA

         UNITED STATES DISTRICT COURT                AUG 13 2020
                  FOR THE
         MIDDLE DISTRICT OF PENNSYLVANIA         PER_____
                                                      DEPUTY CLERK
```

CHARLES PICARELLA JR.
    Plaintiff

v.

No.

Non-Jury Trial Demand

JOHN WETZEL, sued individually and in his official capacity; ROBERT MARSH, sued individually and in his official capacity; DORINA VARNER, sued individually and in her official capacity; KERI MOORE, sued individually and in her official capacity; JOHN DOE 1, sued individually and in his official capacity; JOHN DOE 2, sued individually and in his official capacity; JOHN DOE 3, sued individually and official capacity; JOHN DOE 4, sued individually and in his official capacity; JOHN DOE 5, sued individually and in his official capacity; JOHN DOE 6, sued individually and in his official capacity; J. BURD, sued individually and in his official capacity; JOHN DOE 7, sued individually and in his official capacity; JOHN DOE 8, sued individually and in his official capacity; B. MASON, sued individually and in her official capacity; ROBERT WILLIAMSON, sued indivudally and in his official capacity; PENNSYLVANIA DEPARTMENT OF CORRECTIONS,
    Defendants

## COMPLAINT

### I. Introduction

Plaintiff brings this action seeking redress for violation of federal civil rights pursuant to 42 U.S.C. §1983. Plaintiff also seeks relief for violation of his rights as afforded by state law and redress for conversion of property.

- 1 -

## II. Jurisdiction and Venue

1. This Court has authority to hear this matter pursuant to 28 U.S.C. §1331, conferring Federal District Courts jurisdiction over lawsuits alleging violation of rights afforded by the Constitution of the United States.

2. This Court has supplemental jurisdiction to hear claims arising from violation of state law pursuant to 28 U.S.C. §1367.

3. The United States District Court for the Middle District of Pennsylvania is the appropriate venue for this action pursuant to 28 U.S.C. §1391 because it is where all events giving rise to Plaintiff's claims occurred.

## III. Parties

4. Plaintiff is Charles Picarella Jr. [Picarella], an individual who was incarcerated within the Pennsylvania Department of Corrections at all times referenced in this Complaint.

5. Defendant John Wetzel [Wetzel] was the Secretary of the Pennsylvania Department of Corrections at all times referenced in this Complaint.

6. Wetzel had the authority and obligation to propose, implement, and enforce, policies, procedures, and practices to ensure that the Department of Corrections operated in a manner that protected the rights of prisoners, including Picarella.

7. Defendant Robert Marsh [Marsh] was the Superintendent of the State Correctional Institution - Benner Township [SCI Benner Twp.] at all times referenced in this Complaint.

8. Marsh had the authority and obligation to propose, implement, and enforce policies, procedures, and practices to ensure that State Correctional Institution - Mahanoy operated in a manner that protected the rights of prisoners, including Picarella.

9. Defendant Dorina Varner [Varner] was the Chief Grievance Officer for the Pennsylvania Department of Corrections at all times referenced in this Complaint.

10. Varner had the authority and obligation to investigate and dispose of administrative grievances filed by prisoners, including Picarella, in a manner that protected their rights.

11. Defendant Keri Moore [Moore] was acting in the capacity of Chief Grievance Officer for the Pennsylvania Department of Corrections at all times referenced in this Complaint.

12. Moore had the authority and obligation to investigate and dispose of administrative grievances filed by prisoners, including Picarella, in a manner that protects the rights of prisoners, including Picarella.

13. Defendant John Doe 1 [Doe 1] was a member of the Incoming Publication Review Committee [IPRC] for the Pennsylvania Department of Corrections at all times referenced in this Complaint.

14. Defendant John Doe 2 [Doe 2] was a member of the IPRC for the Pennsylvania Department of Corrections at all times referenced in this Complaint.

15. Defendant John Doe 3 [Doe 3] was a member of the IPRC for the Pennsylvania Department of Corrections at all times referenced in this Complaint.

16. Defendant John Doe 4 [Doe 4] was a member of the IPRC for the Pennsylvania Department of Corrections at all times referenced in this Complaint.

17. Defendant John Doe 5 [Doe 5] was a member of the IPRC for the Pennsylvania Department of Corrections at all times referenced in this Complaint.

18. Defendant John Doe 6 [Doe 6] was a member of the IPRC for the Pennsylvania Department of Corrections at all times referenced in this Complaint.

19. Doe 1, Doe 2, Doe 3, Doe 4, Doe 5, and Doe 6 had the authority and obligation to review incoming publications for prisoners, including Picarella, to determine whether such would be permitted for receipt in a manner that protects the rights of prisoners, including Picarella.

20. Defendant J. Burd [Burd] was employed by the Pennsylvania Department of Corrections as an Administrative Officer at all times referenced in this Complaint.

21. Burd has the authority and obligation to investigate and dispose of administrative grievances filed by prisoners, including Picarella, in a manner that protects the rights of prisoners, including Picarella.

22. Defendant John Doe 7 [Doe 7] was employed by the Pennsylvania Department of Corrections as a mailroom employee at the State Correctional Institution -Mahanoy [SCI - Mahanoy] at all times referenced in this Complaint.

23. John Doe 8 [Doe 8] was employed by the Pennsylvania Department of Corrections as an employee in the mailroom at SCI - Mahanoy at all times referenced in this Complaint.

24. Doe 7 and Doe 8 had the authority and obligation to review incoming correspondence for prisoners, including Picarella, and determine if such was permitted to be received in a manner that protects the rights of prisoners, including Picarella.

25. Defendant Robert Williamson [Williamson] was employed by the Pennsylvania Department of Corrections as a corrections lieutenant at all times referenced in this Complaint.

26. Williamson had the authority and obligation to follow Department of Corrections policy and procedure, as well as Pennsylvania law, in performing his employment and in a manner that protected the rights of prisoners, including Picarella.

27. Defendant Pennsylvania Department of Corrections [Department] is an administrative agency of the Commonwealth of Pennsylvania.

28. The Department has the authority and obligation to propose, implement, and enforce policies, procedures, and practices to operate the Department in a manner that protects the rights of prisoners, including Picarella.

29. All Defendants were acting under color of state law relating to their actions and omissions referenced in this Complaint.

## IV. Facts

A. Pennsylvania Statute

30. Title 61 Pennsylvania Consolidated Statute, Section 5901 [61 Pa.C.S. §5901], provides for mandatory periods of outdoor exercise for prisoners incarcerated within the Commonwealth of Pennsylvania.

31. 61 Pa.C.S. §5901(a)(1) reads as follows:

"A chief administrator who may or shall have in charge any inmate, whether the inmate has been tried or not, shall provide the inmate with at least two hours of daily physical exercise in the open, weather permitting, and upon such days on which the weather is inclement, with two hours daily physical exercise, inside the correctional institution."

32. 61 Pa.C.S. §59019a)(2) reads as follows:

"The physical exercise must be safe and practical, and the judges of several courts are to be the judges thereof."

33. 61 Pa.C.S. §5901 vests the authority to make determinations as to whether providing exercise for prisoners held in prisons within the Commonwealth is safe and/or practical to the judges of the courts of the Commonwealth of Pennsylvania.

34. 61 Pa.C.S. §5901 does not grant the Department nor the administrators of the Department any authority to make a determination as the whether providing exercise for prisoners confined therein is safe and/or practical.

B. Denial of Exercise at State Correctional Institution - Benner Township

35. From August 29, 2018, through January 16, 2020, Picarella was housed at the State Correctional Institution - Benner Township [SCI Benner Twp.].

36. During that period, Picarella was housed in the inmate general population.

37. From August 29 through September 18, 2018, Picarella was denied the opportunity for exercise as mandated by 61 Pa.C.S. §5901.

38. On October 31 and November 1, 2018, Picarella was denied the opportunity for exercise as mandated by 61 Pa.C.S. §5901.

39. From December 27, 2018, through January 2, 2019, Picarella was denied the opportunity for exercise as mandated by 61 Pa.C.S. §5901.

40. On March 9, 2019, Picarella was denied the opportunity for exercise as mandated by 61 Pa.C.S. §5901.

41. On May 21, 2019, Picarella was denied the opportunity for exercise as mandated by 61 Pa.C.S. §5901.

42. On August 19 and August 20, 2019, Picarella was denied the opportunity for exercise as mandated by 61 Pa.C.S. §5901.

43. From November 8 through November 12, 2019, Picarella was denied the opportunity for exercise as mandated by 61 Pa.C.S. §5901.

C. Denial of Exercise at the State Correctional Institution - Mahanoy

44. From January 16, 2020, until present, Picarella has been housed at the State Correctional Institution - Mahanoy [SCI Mahanoy].

45. During that period, Picarella was housed in the inmate general population.

46. From January 28, 2020, through January 30, 2020, Picarella was denied the opportunity for exercise as mandated by 61 Pa.C.S. §5901.

47. From March 23, 2020, and continuing presently, Picarella has been and continues to be denied the opportunity for exercise as mandated by 61 Pa.C.S. §5901.

D. Defendants' Actions in the Denial of Exercise

48. Wetzel and the Department had knowledge of the denial of Picarella's opportunity for exercise as detailed above and through policy, procedure, and practice, permitted such denial.

49. Wetzel and the Department had the authority and obligation to ensure that Picarella had the opportunity for exercise as mandated by 61 Pa.C.S. §5901 and failed to do so as detailed above.

50. Marsh had knowledge of the denial of Picarella's opportunity for exercise as detailed in Section B above and, through policy, procedure, and practice, permitted such denial.

51. Marsh had the authority and obligation to ensure that Picarella had the opportunity for exercise as mandated by Pa.C.S. §5901 and failed to do so in those instanced detailed in Section B above.

52. Mason had knowledge of the denial of Picarella's opportunity for exercise as detailed in paragraph 46 and, through policy, procedure, and practice, permitted such denial.

53. Mason had and has the authority and obligation to ensure that Picarella was and is afforded the opportunity for exercise as mandated by 61 Pa.C.S. §5901 and failed, and continues to fail, to do so as detailed in paragraph 46 above.

E. Denial of Incoming Publication, Rolling Stones Magazine

54. On November 6, 2018, Picarella received notice that he would not be permitted to receive the incoming publication November 2018 Rolling Stones Magazine, issue no. 1321.

55. Such notice was given to Picarella via a Form DC-ADM 803, Attachment 3-B. [Copy of DC-ADM 803, Attachment 3-B follows as EXHIBIT E1]

56. The decision relating to the denial of the magazine was made by members of the Incoming Publication Review Committee, Doe 1, Doe 2, and Doe 3.

57. The notice provided to Picarella was too vague as to give Picarella adequate notice of the reason for the denial of the magazine.

58. The actions of Doe 1, Doe 2, and Doe 3 in determining that Picarella was to be denied receipt of the publication were contrary to Department policy, specifically, DC ADM 803(3)(c)(2). Copy of DC-ADM 803(3) follows as EXHIBIT E2]

59. Denying Picarella receipt of the magazine was without any penological objective.

60. Picarella appealed the denial of the magazine to Marsh and Marsh upheld the denial.

61. Picarella appealed Marsh's decision upholding the denial and that decision was again upheld by Moore, acting on behalf of Varner.

F. Denial of Incoming Publication - Chemistry Textbook

62. On February 21, 2019, Picarella received notice that he would not be permitted to receive the incoming publication "Chemistry: The Study of Matter".

63. Such notice was given to Picarella via a Form DC-ADM 803, Attachment 3-B. [Copy of DC-ADM 803, Attachment 3-B follows as Exhibit F1]

64. The decision relating to the denial of the magazine was made by members of the Incoming Publication Review Committee, Doe 4, Doe 5, and Doe 6.

65. The actions of Doe 1, Doe 2, and Doe 3 in determining that Picarella was to be denied receipt of the publication were contrary to Department policy, specifically, DC-ADM 803(3)(b).

66. Denying Picarella receipt of the magazine was without penological objective.

67. Picarella appealed the denial of the magazine to Marsh and Marsh upheld the denial.

68. Picarella appealed Marsh's decision upholding the denial and that decision was again upheld by Moore, acting on behalf of Varner.

G. Defendants' Actions in Denial of Incoming Publications

69. Doe 1, Doe 2, Doe 3, Marsh, Moore, Varner, and the Department had knowledge of the denial of Picarella's incoming publication as detailed in Section E above and permitted such denial.

70. Doe 4, Doe 5, Doe 6, Marsh, Moore, Varner, and the Department had knowledge of the denial of Picarella's incoming publications as detailed in Section F above and permitted such denial.

71. Doe 1, Doe 2, Doe 3, Doe 4, Doe 5, Doe 6, Marsh, Moore, Varner, and the Department, had the authority and obligation to ensure that Picarella's incoming publications were processed in a manner that protected his rights and failed to do so.

G. Denial of Incoming Correspondence - Attorney Munion

72. During April and May, 2018, Picarella was prosecuting a civil rights action, Picarella v. Brouse, No. 1:16-cv-501, U.S. District Court for the Middle District of Pennsylvania.

73. Picarella proceeded in the matter pro se, and opposing counsel was Christine Munion, Esq. [Munion], of Ferren and Associates.

74. In the course of litigation Munion attempted to send correspondence to Picarella.

75. On April 15, 2019, correspondence from Munion to Picarella was received by the Department.

76. On April 18, 2019, correspondence from Munion to Picarella was received by the Department.

77. On April 19, 2019, correspondence from Munion to Picarella was received by the Department.

78. On April 29, 2019, correspondence from Munion to Picarella was received by the Department.

79. On May 6, 2019, correspondence from Munion to Picarella was received by the Department.

80. On May 7, 2019, correspondence from Munion to Picarella was received by the Department.

81. Said correspondences from Munion were not permitted to be received by Picarella.

82. Picarella was not provided with any notice of the rejection of his incoming correspondence from Munion.

83. The Department has the authority and obligation to provide Picarella with notice of the rejection of incoming correspondence in a manner that protects Picarella's rights.

84. It is the policy, procedure, and practice of the Department to not provide notice to prisoners, including Picarella, of rejection of incoming correspondence from attorneys, such as Munion.

H. Department's Incoming Correspondence Policy

85. The Department maintains a policy, DC - ADM 803 (1)(c)(11), that disallows prisoners, including Picarella, from receiving incoming correspondence with information related to "UCC/Sovereign Citizens/Redemption Process". [Copy of DC-ADM 803 (1)(c)(11) follows as EXHIBIT H1]

86. The Department lacks any standard, criteria, and/or definition establishing what material would be considered "UCC", "Sovereign Citizens", and/or "Redemption Process" pursuant to DC-ADM803(1)(c)(11).

    I. Denial of Incoming Correspondence
       Attorney General of the State of Washington

87. On April 14, 2020, Picarella received a notice from the Department that his incoming correspondence from the Attorney General of the State of Washington [Attorney General] would not be permitted for receipt by Picarella.

88. Picarella received the notice via a form DC-ADM 803, Attachment 1-B. [Copy of the Notice follows as EXHIBIT I1]

89. The notice to Picarella did not indicate the reason for the denial of the incoming publication.

90. The determination to disallow the correspondence for receipt by Picarella was made by Doe 7, an employee of the mailroom at SCI Mahanoy.

91. Picarella believes, through knowledge and information, that the denial is based upon Doe 7's determination that the correspondence contained material in violation of DC-ADM 803 (1)(c)(11).

92. Doe 7 and the Department failed to provide Picarella with adequate notice of the reason for the disallowance of the incoming correspondence.

    J. Denial of Incoming Correspondence
       Lewis and Clark Law School

93. On May 13, 2020, Picarella received a notice from the Department that his incoming correspondence from the Lewis and Clark Law School [Lewis and Clark] would not be permitted for receipt by Picarella.

94. Picarella received the notice via a form DC-ADM 803, Attachment 1-B. [Copy of the Notice follows as EXHIBIT J1]

95. The determination to disallow the correspondence for receipt by Picarella was made by Doe 8, an employee of the mailroom at SCI Mahanoy.

96. The determination to deny Picarella receipt of the correspondence from Lewis and Clark was based upon a determination by Doe 8 that it contained material in violation of DC-ADM 803(1)(c)(11).

K. Defendants' Actions in Denying
   Picarella receipt of Incoming Correspondence

97. The Department policy at DC-ADM 803(1)(c)(11) is excessively vague.

98. The Department's policy at DC-ADM 803 (1)(c)(11) lacks legitimate penological objective.

99. The Department and Doe 7 failed to provide Picarella with adequate notice in denying him receipt of correspondence from the Attorney General.

100. The actions of Doe 7 in denying Picarella receipt of the correspondence from the Attorney General was without legitimate penological interest.

101. The actions of Doe 8 in denying Picarella receipt of correspondence from Lewis and Clark was without legitimate penological objective.

L. Violence Reduction Strategy

102. On May 21, 2019, The Department implemented its Violence Reduction Strategy. [Copy of the Violence Reduction Strategy follows as EXHIBIT K1]

103. The strategy identifies four specific actions that would constitute a "prohibited violent act".

104. The Violence Reduction Strategy authorizes summary sanction and punishment for prisoners and/or prisoners' associates, including Picarella, that the Department, or its designee, determine to have committed any of the specified prohibited violent acts.

105. Sanctions and punishment include confining prisoners, including Picarella, in their cell for 36 continuous hours if they are housed on the housing unit on which the prohibited violent act occurred, regardless of whether they had any involvement with the prohibited violent act or not.

106. Sanctions and punishment for prisoners, including Picarella, include reduction of visits to one visit per month, regardless of whether they where involved with the prohibited violent act or not.

107. Sanctions and punishment for prisoners, including Picarella, includes reduction of phone time to one telephone call per month, regardless of whether they were involved in the prohibited violent act or not.

108. Sanctions and punishment for prisoners, including Picarella, includes revocation of commissary, regardless of whether they were involved in the prohibited violent act or not.

109. Sanction and punishment for prisoners, including Picarella, includes revocation of outdoor exercise, regardless of whether they were involved with the prohibited violent act or not.

110. Sanctions and punishment for prisoners, including Picarella, includes revocation of activities priviledges, regardless of whether they were involved in the prohibited violence act or not.

111. The Department's Violence Reduction Strategy lacks standards, criteria, or definitions for determining whether a prisoner, including Picarella, will be found to be subject to terms and conditions therein.

112. The Department's Violence Reduction Strategy lacks a legitimate penological objective.

113. The Department's determination to apply the Violence Reduction Strategy sanctions and punishment were not subject to notice, hearing, notice of disposition of any deliberation of the Department, nor opportunity for appeal.

L. Conversion of Picarella's Property

114. On May 21. 2019, Picarella submitted an order sheet to the commissary at SCI Benner Twp.

115. Included in the May 21, 2019, order was a 4 ounce bag of regular Buglar brand pipe tobacco, SKU #88404, priced at $9.41 plus 6% sales tax.

116. On May 21, 2019, $9.97 ($9.41 plus 6% tax) was deducted from Picarella's inmate account for the purchase of the Buglar brand tobacco.

117. On May 28, 2019, Picarella arrived at the SCI Benner Twp. commissary department to retrieve his commissary order.

118. Picarella was advised that the 4 ounce bag of regular Buglar brand pipe tobacco was not in stock.

119. The clerk at the commissary distribution window made a notation on Picarella's commissary order receipt that the item was out of stock. SEE: No. 8, May 21 Commissary Order Receipt. [Copy of May 21, 2019, Commissary Order Receipt follows as EXHIBIT L1]

120. Picarella did not receive any refund for the $9.97 deducted for the Buglar brand tobacco.

121. On June 2, 2019, Picarella filed an administrative appeal relating to this issue and sought reimbursement.

122. On June 12, 2019, Williamson issued a response to Picarella's administrative greivance.

123. Williamson's response completely failed to address the claims of Picarella's administrative grievance and denied Picarella relief.

124. The Department retained Picarella's $9.97 and Picarella was never provided with the Buglar brand tobacco.

125. Williamson's actions in disposing of Picarella's administrative grievance failed to adhere to Department policy and procedure as he did not investigate the matter in any meaningful way.

126. Wiliamson's actions in disposing of Picarella' administrative grievance failed to adhere to Department policy and procedure as he did not provide a disposition based in fact.

- 13 -

## V. Exhaustion

127. Picarella has exhausted the Pennsylvania Department of Correction's administrative grievance process for all matters presented in this Complaint.

## VI. Legal Claims

128. In denying Picarella the opportunity for outdoor exercise as detailed above, the Department, Wetzel, Marsh, and Mason violated Picarella's right to due process of law and equal protection of law.

129. In denying Picarella's incoming publications as detailed above, the Department, Doe 1, Doe 2, Doe 3, Doe 4, Doe 5, Doe 6, Marsh, Moore, and Varner violated Picarella's right to free association, due process of law, and equal protection of law.

130. In denying Picarella receipt of incoming correspondence, Doe 7, Doe 8, and the Department violated Picarella's right to free association, due process of law, and equal protection of law.

131. The Department's Violence Reduction Strategy policy denies Picarella due process of law and equal protection of law.

132. The Department's seizure of Picarella's $9.97 constitutes conversion, a common law tort of the Commonwealth of Pennsylvania.

## VII. Previous Litigation and Waiver

133. Picarella has not previously litigated nor waived the claim presented in this Complaint.

## VIII. Relief

WHEREFORE, Picarella prays that the Honorable Court grant him relief in the following:

A) Enter declaratory judgment for Picarella;

B) Award compensatory damages to Picarella jointly and severally against Defendants;

C) Award punitive damages to Picarella jointly and severally against Defendants;

D) Enter temporary and permanent injunctive relief to Picarella affording him the outdoor exercise mandated by 61 Pa.C.S. §5901;

E) Award Picarella the costs and fees associated with prosecuting this matter;

F) Any other relief that the Honorable Court deems appropriate.

Respectfully,

*[signature]*

Charles Picarella Jr.  
Plaintiff, pro se

August 15, 2020

Charles Picarella Jr.  
#MZ7013  
SCI Mahanoy  
301 Morea Rd.  
Frackville, PA 17932

Charles Picarella Jr.  
#MZ7013  
SCI Mahanoy  
301 Morea Rd.  
Frackville, PA 17932

Aug. 15, 2020

Office of the Clerk  
United States District Court  
Middle District of Pennsylvani  
228 Walnut St.  
PO Box 983  
Harrisburg, PA 17108

**FILED**  
HARRISBURG, PA  

AUG 13 2020  

PER _____  
DEPUTY CLERK

RE: Commencement of New Action  
    Picarella v. Wetzel, et al.  
    Civil Cover Sheet, Complaint with Exhibits, Waiver Forms

To the Clerk:

Please find enclosed filing necessary to commence a civil action. I have enclosed the following forms:

1. Completed Civil Cover Sheet
2. Complaint with Exhibits
3. Waiver Forms for Defendants
4. Application to Proceed In Forma Pauperis

Please accept these for filing in commencement of a new action.

Thank you for your time and attention in this matter.

Charles Picarella Jr.

CHARLES PICARELLA #MZ7013
SCI MAAHNOY
301 MOREA RD.
FRACKVILLE, PA 17932

RECEIVED
HARRISBURG, PA
AUG 13 2020
PER
DEPUTY CLERK

INMATE MAIL
PA DEPT OF CORRECTIONS




OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
U.S. COURTHOUSE
228 WALNUT ST.
PO BOX 983
HARRISBURG, PA 17108