## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES PICARELLA,** | : | **CIVIL ACTION NO. 1:20-CV-1440** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN WETZEL**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

Plaintiff Charles Picarella ("Picarella"), a state inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), commenced this action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  The matter is proceeding via a third amended complaint.  (Doc. 50).  Named as defendants are John Wetzel, Robert Marsh, Dorina Varner, Keri Moore, J. Burd, Bernadette Mason, Robert Williamson, Theresa DelBalso, B. Ralston, and thirteen John Doe individuals.  Before the court is a Rule 12(b) motion (Doc. 61) to dismiss filed by defendants DelBalso and Ralston.  For the reasons set forth below, the motion will be granted in part and denied in part.

### I.    Factual Background & Procedural History[1]

Defendant DelBalso was the Superintendent of the State Correctional Institution at Mahanoy ("SCI-Mahanoy"), Frackville, Pennsylvania, from March 9, 2020 through April 3, 2020.  (Doc. 50 ¶ 28).  Picarella contends that defendant DelBalso "had the authority and obligation to propose, implement, and enforce

---

[1]  For purposes of this memorandum, we only include the factual allegations against defendants DelBalso and Ralston.

policies, procedures, and practices to ensure that SCI Mahanoy operated in a manner that protected the rights of prisoners." (<u>Id.</u> ¶¶ 28-30).  He alleges that he was denied two hours of daily outdoor exercise at SCI-Mahanoy from January 28, 2020 through January 30, 2020, and from March 23, 2020 through the filing of the third amended complaint.  (<u>Id.</u> ¶¶ 49-50, 64-68).  Picarella asserts that these denials were not due to inclement weather.  (<u>Id.</u> ¶ 51).  Defendant DelBalso was allegedly aware of the denial of exercise, and allowed the denial through a policy, procedure, and practice that she enforced.  (<u>Id.</u> ¶¶ 66-67).  Picarella further alleges that defendant DelBalso denied his right to exercise under 61 Pa.C.S. § 5901.  (<u>Id.</u> ¶¶ 64-68, 239).

Picarella contends that defendant Ralston was employed as a mailroom inspector at SCI-Mahanoy in April and May of 2020.  (<u>Id.</u> ¶ 20).  In this capacity, defendant Ralston allegedly had the authority to review incoming prisoner mail and to determine whether the mail was appropriate for receipt by the inmate.  (<u>Id.</u> ¶ 21).  Picarella alleges that defendant Ralston denied him incoming, non-privileged correspondences from the Office of Attorney General of Washington State and the Lewis and Clark Law Review, in violation of his First Amendment right to free speech and free association.  (<u>Id.</u> ¶¶ 179-185, 242).

On or about April 13, 2020, defendant Ralston reviewed incoming correspondence to Picarella from the Attorney General containing information that debunked Sovereign Citizenship theories.  (<u>Id.</u> ¶¶ 178-80).  Defendant Ralston determined that the correspondence was unacceptable pursuant to Department

policy DC-ADM 803(1)(c)(11), Inmate Mail and Incoming Publications. (Id. ¶¶ 181, 184; Doc. 50 at 33-34). Picarella received an unacceptable correspondence form from the mailroom. (Doc. 50 ¶ 182). The form did not provide a reason for the confiscation of the mail sent to him from the Attorney General. (Id. at ¶¶ 182-83; Doc. 50 at 37). Picarella thus alleges that the did not receive adequate notice of the reason for the confiscation of the correspondence from the Attorney General. (Doc. 50 ¶ 185).

On or about May 13, 2020, defendant Ralston reviewed incoming correspondence to Picarella from the Lewis and Clark Law Review containing information that debunked Sovereign Citizenship theories. (Id. ¶¶ 189-91). Defendant Ralston determined that the correspondence was unacceptable pursuant to Department policy DC-ADM 803(1)(c)(11). (Id. ¶ 192). The unacceptable correspondence form from the mailroom informed Picarella that the incoming mail sent to him from the Law Review was confiscated because it contained materials related to the Uniform Commercial Code ("UCC"), Sovereign Citizens, and the Redemptive Process. (Doc. 50 at 39).

Picarella alleges that he sought the materials from the Attorney General and the Law Review to educate and discourage fellow inmates from making sovereign citizenship claims. (Doc. 50 ¶¶ 175-76). He acknowledges that he "has not been permitted to receive these materials because Department policy at DC-ADM 803(1)(c)(11) prohibits materials, even those that support the Department's position, from being received by prisoners." (Id. ¶ 177).

3

Picarella availed himself of the administrative review process by filing grievances related to all claims in this action.  (Id. ¶¶ 52-53, 55, 238).

Defendants DelBalso and Ralston move to dismiss the third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 61).  The motion is fully briefed and ripe for resolution.

## II.    __Legal Standard__

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the

face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See

Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step,

"the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"

Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal

elements of a claim should be separated; well-pleaded facts must be accepted as

true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v.

UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual

allegations have been isolated, the court must determine whether they are sufficient

to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550

U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient

to "raise a right to relief above the speculative level").  A claim "has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678.

**III.    Discussion**

     **A.    Official Capacity Claims**

     Defendants DelBalso and Ralston argue first, and correctly, that Picarella's

claims against them in their official capacities are barred by sovereign immunity.

(Doc. 64 at 4).  Personal capacity suits under section 1983 seek to recover money

from a government official, as an individual, for acts performed under color of state

law.  Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988).  Official capacity suits, in

contrast, generally represent an action against an entity of which the government

official is an agent.  Id.; see also Monell v. Dep't of Social Servs., 436 U.S. 658, 690 n. 55 (1978).  When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state.  Hafer v. Melo, 502 U.S. 21, 25 (1991).  However, the doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-01, 117 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996); Lavia v. Pennsylvania, 224 F.3d 190, 195-96 (3d Cir. 2000).  That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is sought.  Scheuer v. Rhodes, 416 U.S. 232, 237-38 (1974).  Congress has not abrogated the immunity regarding Picarella's claims, nor has Pennsylvania waived this grant of immunity.  See 42 PA. C.S.A. § 8521(b).  Thus, Picarella's section 1983 claim against defendants DelBalso and Ralston in their official capacities is barred by sovereign immunity and will be dismissed.  See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010).

**B.    Claims against Defendant DelBalso**

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal

6

direction or of actual knowledge and acquiescence." <u>Rode</u>, 845 F.2d at 1207-08; <u>see also</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Atkinson v. Taylor</u>, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  <u>Evancho</u>, 423 F.3d at 354; <u>Rode</u>, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. <u>Rode</u>, 845 F.2d at 1208.  A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.  <u>Id.</u> at 1207.

Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." <u>Iqbal</u>, 556 U.S. at 676.  With respect to supervisory liability, there are two theories: "one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 n.5 (3d Cir. 2010 (quotation and alteration marks omitted).  With respect to the first theory, "the plaintiff must establish that: (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and

7

(4) the injury resulted from the policy or practice." <u>Merring v. City of Carbondale</u>, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989)).  As to the second theory, a plaintiff must show that each defendant personally participated in the alleged constitutional violation or approved of it.  <u>See</u> <u>C.N. v. Ridgewood Bd. of Educ.</u>, 430 F.3d 159, 173 (3d Cir. 2005); <u>see</u> <u>also</u> <u>Iqbal</u>, 556 U.S. at 677.

In the third amended complaint, Picarella asserts that defendant DelBalso was the Superintendent of SCI-Mahanoy and "had the authority and obligation to propose, implement, and enforce policies, procedures, and practices to ensure that SCI Mahanoy operated in a manner that protected the rights of prisoners."  (Doc. 50 ¶¶ 28-30).  Picarella also suggests that defendant DelBalso "had knowledge of the denial of Picarella's opportunity for exercise," and allowed this denial through a policy, procedure, and practice that she enforced.  (<u>Id.</u> ¶¶ 66-67).  Construing the third amended complaint liberally, these allegations are sufficient to establish the personal involvement of defendant DelBalso.  The court will deny defendants' motion to dismiss on the basis that defendant DelBalso lacked personal involvement in the alleged wrongs.

**C.    Claim under 61 Pa.C.S. § 5901**

Picarella alleges that defendant DelBalso denied his right to exercise under 61 Pa.C.S. § 5901.  (Doc. 50 ¶¶ 64-68, 239).  Section 5901 of the Prisons and Parole Code, 61 Pa.C.S. § 5901, requires the Department of Corrections to provide inmates with two hours of daily physical exercise.  Section 5901 provides as follows:

(1) A chief administrator who may or shall have in charge any inmate, whether the inmate has been tried or not, shall provide the inmate with at least two hours of daily physical exercise in the open, weather permitting, and, upon such days on which the weather is inclement, with two hours of daily physical exercise inside of the correctional institution.

(2) The physical exercise must be safe and practical, and the judges of several courts are to be the judges thereof.

(3) Inmates in segregation or disciplinary status shall receive a minimum of at least one hour of daily exercise five days per week.

61 Pa.C.S. § 5901. Picarella contends that defendant DelBalso has not complied with Section 5901, which, in turn, violates his constitutional right to due process. (Doc. 50 ¶ 239). Section 5901 of the Prisons Code is a Pennsylvania state statute that does not create federal civil liability. "To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of *a right secured by the Constitution or laws of the United States*, and that the alleged deprivation was committed under color of state law." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (emphasis added). Picarella's reliance on a Pennsylvania statute—61 Pa.C.S. § 5901—is misplaced and defendants' motion will be granted with respect this claim.

**D.    First Amendment Claim**

Picarella next asserts that defendant Ralston violated his First Amendment rights by denying him incoming, non-privileged correspondences from the Office of Attorney General of Washington State and the Lewis and Clark Law Review, pursuant to Department policy DC-ADM 803(1)(c)(11). (Doc. 50 ¶¶ 178-185, 189-192,

242).  The correspondence from the Attorney General was confiscated because Ralston believed it was in violation of DC-ADM 803(1)(c)(11), though the unacceptable correspondence form does not specify the confiscation reason.  (Id. ¶ 184; Doc. 50 at 37).  Defendant Ralston confiscated the correspondence to Picarella from the Law Review because it contained UCC, Sovereign Citizen, and Redemptive Process related materials, in violation of DC-ADM 803(1)(c)(11).  (Doc. 50 at 39).

Inmates have a liberty interest in their mail under the First and Fourteenth Amendments and their ability to send and receive mail may be restricted only for legitimate penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).  A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  See Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995), abrogated on other grounds by Lewis v. Casey, 518 U.S. 343 (1996).  In Turner, the United States Supreme Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest.  Turner, 428 U.S. at 89.  The Court established a balancing test pursuant to which courts analyze prohibitions on prisoners' exercise of their constitutional rights by considering the following four factors: (1) whether prohibiting an inmate from exercising a constitutional right is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising that right; (3) what effect accommodation of the interest would have on

guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives available that continue to serve the prison's interest without impinging constitutional rights.  Id. at 89-91.  The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security.  Id.

Picarella concedes that DC-ADM 803(1)(c)(11) prohibits the materials he sought from the Attorney General and the Law Review.  (Doc. 50 ¶ 177).  To the extent that Picarella challenges the constitutionality of the DOC's mail policy set forth at DC-ADM 803, it has consistently been held that the policy does not violate an inmate's constitutional rights.  In Fontroy v. Beard, 559 F.3d 173 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit held that because the policy set forth in DC-ADM 803 was "reasonably related to legitimate penological interest.' Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), it passes constitutional muster."  Fontroy, 559 F.3d at 174.  Moreover, with respect to correspondence containing UCC materials, the Third Circuit addressed this precise issue and held that the confiscation of an inmate's legal materials concerning UCC filings did not state a viable First Amendment claim.  See Monroe v. Beard, 536 F.3d 198, 206 (3d Cir. 2008); see also Bundy v. Beard, 924 A.2d 723, 2007 WL 1468726 (Pa. Cmwlth. Ct. May 22, 2007) (upholding the validity of the amendment to DC-ADM 803 that prohibited UCC related material).  Further, the Third Circuit has found that a Pennsylvania state prison could sanction an inmate for the possession of UCC

related materials.  See Edmonds v. Sobina, 296 F. App'x 214 (3d Cir. 2008).[2]

Because the provisions of DC-ADM 803 do not violate an inmate's constitutional

rights, Picarella has failed to state a claim upon which relief can be granted.

Moreover, as set forth in DC-ADM 803, staff at SCI-Mahanoy has a legitimate

interest in the safety of its facility and must determine if any items coming through

the mail pose a threat to the safety of the staff or other inmates.  (See, e.g., Doc. 50

at 27-29, DC-ADM 803; see also Guyer v. Beard, 907 F.2d 1424, 1428 (3d Cir. 1990)

("Preventing the introduction of contraband into the prison is unquestionably a

legitimate penological interest.")).  The court must defer to the prison officials when

it comes to issues of managing a safe and operational prison facility.  Therefore, we

will grant defendants' motion to dismiss with respect to Picarella's First

Amendment claim.

### E.   Fourteenth Amendment Due Process Claims

The Due Process Clause of the Fourteenth Amendment provides that no

state shall "deprive any person of life, liberty, or property, without due process of

law."  U.S. CONST. amend. XIV.

#### 1.   *Procedural Due Process*

Picarella sets forth a due process claim against Defendant Ralston regarding

the confiscation of his correspondence from the Attorney General.  (See Doc. 67 at

---

[2]  The court acknowledges that nonprecedential decisions are not binding
upon federal district courts.  Citations to nonprecedential decisions reflect that the
court has carefully considered and is persuaded by the panel's *ratio decidendi*.

13-14).  To the extent Picarella asserts such a claim for loss of property, he cannot maintain such a claim because neither negligent nor intentional deprivations of property by state officials give rise to a due process violation if state law provides adequate post-deprivation remedies.  See Daniels v. Williams, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due process); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process if meaningful post-deprivation remedy for loss is available).

The Third Circuit has held that the Pennsylvania DOC's grievance procedure constitutes an adequate post-deprivation remedy.  See Monroe, 536 F.3d at 210; Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000). Pennsylvania state law also provides an adequate remedy for prison officials' unlawful deprivation of inmate property.  See 42 PA. CONS. STAT. ANN. § 8522(b)(3); see also Shakur v. Coelho, 421 F. App'x 132, 135 (3d Cir. 2011) (noting that the Pennsylvania Tort Claims Act provides adequate remedy for willful destruction of property).  In his third amended complaint, Picarella asserts that he availed himself of his administrative remedies but did not receive the exact relief requested.  (Doc. 50 ¶¶ 52-53, 55, 238).  Thus, an adequate post-deprivation remedy was available to him.  To the extent Picarella asserts that his grievances were mishandled or wrongfully denied, he has not alleged the denial of a federal right.  See Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir. 2009).  Likewise, if dissatisfied with the responses to his grievances, Picarella has a suitable remedy to pursue under the

Pennsylvania Tort Claims Act.  See Hernandez v. Corr. Emergency Response Team, 771 F. App'x 143, 145 (3d Cir. 2019) (noting that "[e]ven if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy").  We will grant defendants' motion to dismiss with respect to the Fourteenth Amendment procedural due process claim.

### 2.    *Substantive Due Process*

Picarella's substantive due process claim is duplicative of his First Amendment claim and is barred by the "more specific provision rule."  In adopting the "more-specific-provision-rule" established in County of Sacramento v. Lewis, 523 U.S. 833, 843-44 (1998), the Third Circuit noted that "[u]nder this rule, 'if a constitutional claim is covered by a specific constitutional provision . . . , the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' United States v. Lanier, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (clarifying prior holing in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))." Betts v. New Castle Youth Development Center, 621 F.3d 249, 260-61 (3d Cir. 2010).  Picarella's First Amendment claim and Fourteenth Amendment substantive due process claim are based on defendant Ralston's confiscation of his correspondence.  Because this claim is covered by a specific constitutional provision—the First Amendment—the claim must be analyzed under the "more specific provision."

14

### F.    Fourteenth Amendment Equal Protection Claim

Defendants have construed Picarella's third amended complaint as asserting a Fourteenth Amendment equal protection claim against Delbalso and Ralston. (Doc. 64 at 14-15).  However, Picarella clarifies that he "makes no equal protection claim again[st] Defendant DelBalso nor Defendant Ralston."  (Doc. 67 at 14).  Any potential Fourteenth Amendment equal protection claim will be dismissed.

## IV.   <u>Leave to Amend</u>

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  <u>See Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile."  <u>Phillips</u>, 515 F.3d at 245 (citing <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004)).  Picarella has been granted the opportunity to file three amendments to the complaint.  Therefore, the court finds that further amendment would be futile.  <u>See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew</u>, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story . . . giving him further leave to amend would be futile.").

V.     <u>**Conclusion**</u>

The motion (Doc. 61) to dismiss by defendants DelBalso and Ralston will be granted in part and denied in part.  An appropriate order shall issue.


<u>/S/ CHRISTOPHER C. CONNER</u>
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:        August 4, 2022