IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES PICARELLA,** | : | CIVIL ACTION NO. 1:20-CV-1440 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **JOHN WETZEL**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Charles Picarella ("Picarella"), a state inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via a third amended complaint. (Doc. 50). Remaining defendants are John Wetzel, Robert Marsh, Bernadette Mason, and several John Doe individuals. Before the court is defendants' motion (Doc. 82) for reconsideration of the court's August 16, 2022 memorandum and order (Docs. 74, 75). For the reasons set forth below, we will grant in part the motion for reconsideration.

**I.      Factual Background & Procedural History**

In the third amended complaint, Picarella alleges claims for violation of his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution, as well as claims under Pennsylvania statutory and common law. (See Doc. 50). The following facts are relevant to the instant motion for reconsideration.

Picarella asserts defendant Wetzel is the Secretary of the DOC and "has the authority and obligation to propose, implement, and enforce policies, procedures, and practices to ensure that the Department operated and operates in a manner that protects the rights of prisoners." (Id. ¶¶ 4-5). Defendant Marsh was the Superintendent of the State Correctional Institution at Benner Township ("SCI-Benner"), Bellefonte, Pennsylvania, at all relevant times. (Id. ¶ 6). Picarella contends that defendant Marsh "had the authority and obligation to propose, implement, and enforce policies, procedures, and practices to ensure that SCI Benner Twp. operated in a manner that protected the rights of prisoners." (Id. ¶ 7). Defendant Mason is the Superintendent of the State Correctional Institution at Mahanoy ("SCI-Mahanoy"), Frackville, Pennsylvania. (Id. ¶ 24). Picarella contends that defendant Mason "has the authority and obligation to propose, implement, and enforce policies, procedures, and practices to ensure that SCI-Mahanoy operated and operates in a manner that protects the rights of prisoners." (Id. ¶¶ 24-25).

Picarella alleges that defendant Marsh, upon directive by defendant Wetzel, implemented the Violence Reduction Strategy ("VRS") policy at the SCI-Benner. (Doc. 50 ¶¶ 197-98). The VRS was created to reduce violence within state prisons and includes proactive planning and response strategies to prohibited violent acts. (Id. ¶¶ 196, 199). Picarella alleges the policy violates the constitutional rights of inmates, deprives inmates of exercise in violation of 61 PA. CONS. STAT. § 5901, and lacks any legitimate penological objective. (Id. ¶¶ 203-208). He further claims that defendants Wetzel, Mason, and Marsh denied him exercise at SCI-Mahanoy and

2

SCI-Benner in violation of 61 PA. CONS. STAT. § 5901 and deprived him of due process of law.

Defendants Wetzel, Mason, and Marsh previously filed a Rule 12(b) motion to dismiss.[1] (Doc. 52). On August 16, 2022, we granted in part, and denied in part, the motion to dismiss. (Docs. 74, 75). The August 16 order, *inter alia*, dismissed all claims brought pursuant 61 PA. CONS. STAT. § 5901, dismissed all substantive and procedural due process claims, dismissed the Fourteenth Amendment equal protection claim, and dismissed the First Amendment challenge to incoming mail from Attorney Munion, the Attorney General, and the Lewis and Clark School of Law. (Id.) We denied the motion as to Picarella's challenge to the VRS and as to defendants' argument that Wetzel, Mason, and Marsh lacked personal involvement in the alleged wrongdoing. (Id.)

Defendants request that we reconsider certain portions of our August 16 memorandum and order denying, in part, their motion to dismiss. (Docs. 82, 83). The motion is ripe for disposition.

## II. Legal Standard

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or present newly discovered evidence." Hernandez v. United States, 608

---

[1] The motion to dismiss was also filed on behalf of Dorina Varner, Keri Moore, J. Burd, and Robert Williamson. (See Doc. 52). In the court's August 16, 2022 order, defendants Varner, Moore, Burd, and Williamson were dismissed from this action. (Doc. 75).

F. App'x 105, 109 (3d Cir. 2015)[2] (quoting <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985)). Such a motion may be granted based on one of three grounds: (1) "an intervening change in controlling law;" (2) "the availability of new evidence;" or (3) "the need to correct clear error of law or prevent manifest injustice." <u>Lazaridis v. Wehmer</u>, 591 F.3d 666, 669 (3d Cir. 2010) (citing <u>N. River Ins. Co. v. CIGNA Reinsurance Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995)). As such, a party may not rely on evidence that has already been submitted to support a motion for reconsideration. <u>Harsco</u>, 779 F.2d at 909. A motion for reconsideration is not a vehicle to simply "reargue matters already argued and disposed of." <u>Waye v. First Citizen's Nat'l Bank</u>, 846 F. Supp. 310, 313 (M.D. Pa. 1994), <u>aff'd</u>, 31 F.3d 1175 (3d Cir. 1994) (citing <u>Davis v. Lukhard</u>, 106 F.R.D. 317, 318 (E.D. Va. 1984)). A party's mere dissatisfaction with a ruling "is not a proper basis for reconsideration." <u>Velazquez v. UPMC Bedford Mem'l Hosp.</u>, 338 F. Supp. 2d 609, 611 (W.D. Pa. 2004) (quoting <u>Burger King Corp. v. New England Hood and Duct Cleaning Co.</u>, Civ. No. 98-cv-3610, 2000 WL 133756, *2 (E.D. Pa. Feb. 4, 2000)). Given the importance of finality in legal judgments, motions for reconsideration should be granted sparingly. <u>Williams v. City of Pittsburgh</u>, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998).

---

[2] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

### III. Discussion

Defendants' motion for reconsideration seeks *vacatur* of some aspects of our August 16, 2022 memorandum and clarification with respect to others. We address defendants' various arguments in turn.

### A. Claims Against Wetzel, Mason, and Marsh

Defendants urge the court to reconsider our prior ruling that the third amended complaint sets forth sufficient factual allegations against Wetzel, Mason, and Marsh. In the third amended complaint, Picarella alleges these defendants, in their supervisory roles within the DOC and at SCI-Mahanoy and SCI-Benner, have "the authority and obligation to propose, implement, and enforce policies, procedures, and practices" to ensure the DOC and the respective DOC facilities operate in a manner that protects prisoners' rights. (See Doc. 50 ¶¶ 4-7, 24-25). To the extent our August 16, 2022 memorandum holds these allegations alone suffice to establish a defendant's personal involvement in a constitutional violation, (see Doc. 74 at 12), the holding is in error and must be vacated, see Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (holding Section 1983 liability "cannot be predicated solely on the operation of *respondeat superior*" (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998))).

Considered anew, Picarella's third amended complaint does offer some allegations beyond a blanket invocation of vicarious liability. Picarella asserts that Wetzel, Mason, and Marsh knew he was denied exercise in purported violation of Pennsylvania law and the Fourteenth Amendment, (see Doc. 50 ¶ 239); that Wetzel

5

and Marsh violated his First and Fourteenth Amendment rights by denying incoming correspondence from the Attorney General, and that Wetzel's incoming mail policies were insufficient to safeguard against First Amendment violations with respect to incoming mail from the Attorney General and the Lewis and Clark School of Law, (see id. ¶¶ 240-241, 243); and that Marsh implemented the VRS at SCI-Benner at Wetzel's direction, (see id. ¶¶ 197-98). These allegations suffice to establish some level of personal involvement by the defendants, in their capacities as policymakers and supervisors, in the asserted constitutional violations. See Santiago v. Warminster, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (explaining supervisory liability will attach when supervisor (1) establishes and maintains a policy causing constitutional harm or (2) participates in violation of rights, directs others to violate them, or as person in charge, knows of and acquiesces in subordinates' violation).

The problem for Picarella is a supervisory liability claim "necessarily includes as an element an actual violation at the hands of subordinates or employees," id. at 130, and Picarella has failed to plead the requisite underlying violation as to most claims against these defendants. As we explained in our August 16 memorandum, Picarella's allegations concerning the denial of exercise under 61 PA. CONS. STAT. § 5901 cannot be raised under Section 1983. (See Doc. 74 at 13-14). With respect to his Fourteenth Amendment challenges, we held that the grievance system provides adequate post-deprivation procedural due process protections, and the substantive due process claims are barred under the more-specific-provision doctrine to the extent they are duplicative of his First and Fifth Amendment claims.

6

(See id. at 21-24). Lastly, we found that Picarella's allegations concerning incoming mail from the Attorney General and the Lewis and Clark School of Law do not rise to the level of constitutional violations. (See id. at 19-21). We dismissed each of these claims. The absence of an underlying constitutional violation defeats a supervisory theory of liability.

Similar problems defeat most of Picarella's challenges to the VRS. By alleging that Wetzel directed Marsh to implement the VRS policy at SCI Benner, Picarella has pled the basic elements of a custom-or-policy violation against these defendants. (See Doc. 50 ¶¶ 197-198); see also Santiago, 629 F.3d at 129 n.5. We have already held, however, that two of Picarella's three constitutional challenges to the VRS fail on their merits: namely, the procedural due process challenge to the VRS lacks merit because the grievance process provided adequate post-deprivation process, and Picarella pled himself out of an equal protection challenge to the VRS by alleging that *all* inmates are subjected to the same treatment under the policy. (See Doc. 74 at 23, 25). These custom-or-policy claims relating to the VRS thus fail for lack of an underlying constitutional violation.

Picarella's substantive due process claim pertaining to the VRS fares better, at least at this juncture. Although our August 16 memorandum applied the more-specific-provision rule to some of Picarella's substantive due process claims, finding them to be duplicative of his claims under the First and Fifth Amendment, Picarella does not plead First and Fifth Amendment claims with respect to the VRS. (See Doc. 74 at 23-24; see also Doc. 50 ¶ 244 (styling his VRS claim as "deprivation of

7

. . . right to due process of law and equal protection of law"). The more-specific-provision rule accordingly does not apply to this claim, and defendants have not otherwise opposed the claim on its merits. Accordingly, we will grant defendants' motion for reconsideration to the extent we conclude Picarella has failed to plead personal involvement of Wetzel, Mason, and Marsh in any alleged constitutional violations with the limited exception of Picarella's substantive due process claim relating to the VRS against Wetzel and Marsh.

### B.  Violence Reduction Strategy

Defendants next request that we revisit our determination that Picarella has standing to bring a challenge to the VRS. To establish Article III standing, a plaintiff must suffer an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (quoting Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010)). The Supreme Court of the United States has been clear that an injury, to be cognizable, must not be "too speculative." Clapper, 568 U.S. at 409. Rather, the injury must be "*certainly* impending." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 565 n.2, (1992)) (emphasis in original). "[A]llegations of *possible* future injury" are not sufficient. Id. (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)).

Defendants argue that it was error for the court to rely on allegations set forth for the first time in Picarella's opposition brief to find Picarella had standing to challenge the VRS. Picarella does not allege in his third amended complaint that

he has been sanctioned under the VRS; rather, he merely summarizes the VRS and lists sanctions available under the policy. (See Doc. 50 ¶¶ 196-208). It was not until his brief opposing defendants' motion to dismiss that Picarella described when and how he was sanctioned under the VRS. (See Doc. 63 at 17). We agree with defendants that the law prohibits Picarella from amending his pleading via his opposition brief, and the court should not have considered facts alleged only in briefing. See Pennsylvania *ex rel.* Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988). Nonetheless, it is clear from Picarella's brief (and from our prior analysis relying upon Picarella's brief) that Picarella possesses facts which would cure this technical deficiency. Accordingly, while we will grant defendants' motion for reconsideration and vacate our earlier standing analysis, we will grant Picarella leave to amend his pleading to add *only* those facts that pertain to his alleged injuries under the VRS.

### C. John Doe Defendants

Pursuant to Federal Rule of Civil Procedure 4(m), a plaintiff has 90 days from the date he filed his complaint to serve it on the defendants. See FED. R. CIV. P. 4(m). Upon a showing of good cause for failure to serve, the court must extend the time for service; the court may, at its discretion, extend the time for service even if plaintiff has not shown good cause for delay. See id. The factors a court should consider in evaluating whether good cause exists are (1) the reasonableness of the plaintiff's efforts to effect service; (2) prejudice to the defendant because of untimely service; (3) whether the plaintiff has moved for an enlargement of time; and

(4) whether the statute of limitations will bar the plaintiff's claims if the action is dismissed.  See MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097-98 (3d Cir. 1995).

Picarella filed his original complaint on August 14, 2020, and the third amended complaint on December 10, 2021.  (Docs. 1, 50).  On April 7, 2022, we ordered Picarella to show cause why the John Doe defendants should not be dismissed for failure to serve the summons and complaint within 90 days.  (Doc. 68).  Picarella was unable to do so.  In response to the show cause order, Picarella explains he attempted to identify the John Doe defendants through discovery but was only able to properly identify one individual.  (Doc. 70).  Although Picarella has engaged in discovery, the court finds that he has demonstrated good cause for an additional extension of time to permit him an opportunity to identify and serve the remaining John Doe defendants.  Therefore, we will extend the time for service for a period of 30 days from the date of the accompanying order.  Picarella is expressly warned that no further extensions will be granted.  Failure to serve the John Doe defendants within this timeframe will result in dismissal of these defendants without prejudice pursuant to Rule 4(m).

**IV.**     **Conclusion**

The court will grant in part and deny in part defendants' motion (Doc. 82) for reconsideration. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     July 19, 2023